|   |   |
|---|---|
| MPOWER SYSTEMS INDIA (PVT) LTD., an Indian corporation; and UNION POWER TECHNICAL SERVICES LLC, a UAE limited liability company,<br><br>Plaintiffs,<br>v.<br><br>ARTICMASTER INC., a Nevada corporation,<br><br>Defendant. | Case No. 3:16-cv-00558-MMD-WGC<br><br>ORDER |
| ARTICMASTER INC.,<br><br>Counter-Plaintiff,<br>v.<br><br>MPOWER SYSTEMS INDIA (PVT) LTD., an Indian corporation; and UNION POWER TECHNICAL SERVICES LLC, a UAE limited liability company,<br><br>Counter-Defendants. | |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

**I.  SUMMARY**

This case concerns contractual disputes. Pending before the Court is Plaintiffs/Counter-Defendants'—MPower Systems India (PVT) Ltd. ("MPower") and Union Power Technical Services LLC's ("Union Power") (hereinafter collectively, "Plaintiffs")—motion for summary judgment ("MSJ") (ECF No. 24). Additionally before the Court is a motion to seal certain exhibits (ECF No. 27) which appears to be an extension of a

///

protective order that the parties previously stipulated to and which Magistrate Judge William G. Cobb signed (*see id.* at 2–3; ECF Nos. 14, 15).

The Court has considered both motions. It has also reviewed the response (ECF No. 29) and reply (ECF No. 30) to the MSJ. As an initial matter, the Court grants the motion to seal (ECF No. 27). Further, for the reasons stated below the Court denies the MSJ (ECF No. 24).

**II.     BACKGROUND[1]**

**A.     The Parties**

Defendant/Counter-Plaintiff Articmaster Inc. ("Articmaster") is a small Nevada-based technology business that invents products to promote the efficiency of commercial air conditioning units. (ECF No. 24 at 3; ECF No. 29 at 2; ECF No. 25-1 at 29.) It contracts with another U.S. company to manufacture its products (ECF No. 25-1 at 28–29) and engages agents around the world to market and sell its products within particular geographic territories (*id.* at 26-27; 33:22–34, 36–37). There are three tiers of agents in descending order: master agents, distributors, and dealers. (*Id.* at 35, 38.)

Plaintiffs were formerly master agents[2] for Articmaster (*see* ECF No. 28-1 (sealed) at 1–16, 22–40), but their status was changed to distributors in 2013 pursuant to the parties' agreement (*see id.* at 41–75).

**B.     Agreements Between the Parties**

Articmaster entered into Master Agent Agreements ("MAAs") with Airteck (now MPower) and Union Power in 2009, and 2010/2011, respectively. (ECF No. 28-1 (sealed) at 1–16, 22–40; *see also* ECF No. 25-2 at 17; ECF No. 24 at 7.) At some point, Articmaster decided it did not want to place "its proverbial eggs in one basket with the Plaintiffs" as

///

///

---

[1]The following facts are undisputed unless noted otherwise.

[2]MPower was formerly Airteck Master Power India Private Limited (ECF No. 24 at 5; ECF No. 25-2 at 2). Airteck was a master agent for Articmaster (ECF No. 25-1 at 37), however Articmaster contends it does not consider MPower and Airteck to be the same entity (*id.* at 37, 38).

master agents. (ECF No. 29 at 3.) It also noted certain "defaults" by Plaintiffs in ultimately terminating the MAAs. (ECF No. 25-3 at 23–24.)

While whether Articmaster rightfully terminated the MAAs is contested (*see* ECF No. 24 at 8), it is uncontested that MPower and Union Power agreed to become distributors by entering into separate Distributorship Agreements ("DAs") on June 24, 2013, and July 1, 2013, respectively (*see id.* at 10–11; ECF No. 28-1 (sealed) at 41–75). On October 24, 2014, Articmaster renewed both DAs for one-year periods, until June 23, 2015 and June 30, 2015, respectively. (ECF No. 25-3 at 33, 34; ECF No. 24 at 11.)

It is undisputed that over time Plaintiffs made roughly $648,000 in product advance purchases to Articmaster. (*See, e.g.*, ECF No. 29 at 4; ECF No. 24 at 13.) Additionally, Plaintiffs invested $300,000 in Articmaster. (ECF No. 25-3 at 52; ECF No. 26-1 at 3.)

In July 2015, Plaintiffs requested that Articmaster send them share certificates for the $300,000 investment. (ECF No. 28-1 at 80; ECF No. 26-1 at 3.) They noted that they had provided the $300,000 investment, "[b]ut no confirmation of the above by way of share certificates has been issued so far against your confirmation that every 150,000 USD, the share certificate will be issued." (ECF No. 26-1 at 3.) Plaintiffs appear to base their share certificate request on a March 25, 2014 letter from Articmaster with the subject "RE: Assurances Regarding Stock Purchase By MPower and Union Power." (*Id.* at 4.) As relevant, the letter notes:

> In consideration of Union Power and MPower investing one million US dollars in total in Articmaster Inc., (the "Company"), Company hereby states:
>
> 1. For every USD $150,000, the minimum increment of stock purchased by Union Power and MPower in the Company, Company will provide Union Power or MPower, as appropriate, *a receipt evidencing the purchase* of those shares of Articmaster.
>
> . . .
>
> 3. *Upon the completion of MPower and Union Power investing one million US dollars in total* in Phase 2 to the Company, Company shall grant Union Power and MPower a non-transferable right of first refusal to purchase Articmater's shares (common stock) in Phase 2, at the valuation of at least one million US dollars for 10% of Articmaster's common stock, excluding any purchases by employees or consultants of Articmaster.

3

(*Id.* (emphasis added).) Plaintiffs claim Articmaster did not produce the requested share certificates by December 2015. (ECF No. 24 at 13.)

Plaintiffs admit that in November 2015 they suggested that Articmaster applied the approximately $648,000 product advance to "the investment agreement between the parties, with Plaintiffs to pay the remaining $52,000.00, for a total investment of $1,000,000.00." (ECF No. 24 at 13–14; *see also* ECF No. 28-1 (sealed) at 89 (Investment: 3.).)

In December 2015, the parties sought to resolve certain disputes or problems they had been having. *(See, e.g.*, ECF No. 28-2 (sealed) at 2.) In that endeavor, on December 4 or 5, 2015, they mutually agreed to, and signed, new DAs ("DA2s") (ECF No. 28-2 (sealed) at 19–35 (MPower); *id.* at 36–53 (Union Power)), an investor agreement ("IA") (ECF No. 26-1 at 31–32), and supplemental agreements (ECF No. 26-1 at 34, 36).

The IA documents that Plaintiffs are investors in Articmaster and had "invested US nine hundred forty-eight thousand dollars and *has* agreed to invest US fifty two [sic][3] dollars in ARTICMASTER *towards* allotment and issue of Ordinary Shares by ARTICMASTER." (ECF No. 26-1 at 32) (emphasis added). As indicated, the $948,000 is the total of combining the $648,000 product advance purchases and the initial $300,000 investment, as Plaintiffs admit they requested. (*See also* ECF No. 29 at 8.)

MPower's and Union Power's representative—Director, Gunasekaran Ramasamy, affixed his signature and initials throughout the DA2s. (ECF No. 28-2 at 19–53.) Both DA2s defined each party's "Territory" to "mean that [sic] the non-exclusive geographic area of the Indian Sub continent as per Exhibit C." (*Id.* at 19, 37.) However, each DA2 includes a different EXHIBIT C as a stand-alone page, followed by similarly capitalized and bolded words "APPROVED TERRITORY (GEOGRAPHIC REGION)." (*Id.* at 31, 49.) MPower's approved region is listed as:

> Indian Subcontinent including India, Sri Lanka, Bangladesh, Nepal, Bhutan, Pakistan, Maldives collectively the Indian Subcontinent.

---

[3]$52,000 (*see, e.g.*, ECF No. 28-2 at 56 (stating the exact remaining amount as $52,051)).

(*Id.* at 31.) Union Power's approved region is listed as:

> Algeria, Egypt, Iraq, Israel, Jordan, Kuwait, Lebanon, Libya, Morocco, Oman, Palestine, Qatar, Sudan, Tunisia, UAE [(United Arab Emirates)] and Yemen.

(*Id.* at 49.)

The supplemental agreements, noted as effective December 4, 2015 provides:

> 1. Articmaster will execute the requested [IA] and [DA2] requested by [MPower/Union Power] on this date, dependent on [MPower/Union Power] *paying the remainder of $1,000,000 investment* before December 31, 2015 and pays a $200,000 as a product advance on or before January 31, 2016 and $200,000 as a product advance on or before April 30, 2016. If any of these payments are not made after giving 30 days notice to cure, such non-payment the, Investor Agreement shall become void, with no force and effect.
>
> 2. In addition, Distributor is required to pay an additional $ 400,000 as a product advance in order for any products to begin shipping.
>
> 3. **General.** . . . Any provision that is deemed not enforceable or illegal shall not affect the other provisions of this Agreement. This Agreement supersedes and replaces any existing agreement entered into by the Parties. . .

(ECF No. 26-1 at 34, 36) (emphasis added).

There is no dispute that each party in fact signed the DA2s, the IA, and the supplemental agreements. Nonetheless, in early 2016, Plaintiffs sought to unbind themselves from these agreements, unless Articmaster issue shares for monies already invested (i.e., without them making a full one million dollar investment), and include territories they believed were excluded from Union Power's DA2 territory list, *in accordance with what they claimed to be the parties' prior agreements*. (ECF No. 28-2 at 55–58.) In response, Articmaster requested that the December 2015 agreements be complied with (*id.* at 56, 58) and noted, *inter alia*:

> Any share issuance is contingent upon MPower's funding of of [sic] the amounts as set forth in the attached Supplemental Agreement. The first payment of $52051 was due by December 31, 2015 – that payment was not received. Articmaster hereby gives you 30 days notice to pay the monies

///

///

5

due within 30 days or the [IA] shall be null and void as set forth in the
                Supplemental Agreement.

*Id.* at 56.

Plaintiffs claim they "never agreed to invest more in Articmaster without receiving share certificates for the amounts already invested in Arcticmaster." (ECF No. 25-1 at 8, ¶ 70.) They further claim that they "had no option but to sign the agreements (ECF No. 24 at 15) because Articmaster insisted the agreements be sign just before they had to go to the airport, "and due to the fact that [they] had to travel to multiple locations to find a notary . . . [they were] unable to fully review or understand the contents of all these agreements at the time of signing" (*id.*; ECF No. 26-1 at 28).

### C. Plaintiffs' Claims

Plaintiffs filed the instant lawsuit because Articmaster has neither issued them shares nor ship products against the $648,000 product advance. (*See* ECF Nos. 1, 24.) Presently, they seek summary judgment on their claims for (1) breach of contract—claims one and two, (2) breach of the implied covenant of good faith and fair dealing, (3) conversion, and (4) unjust enrichment. (ECF No. 24.) They also seek declaratory relief, requesting declarations of various alleged entitlements, and ultimately requesting that the Court enter judgment in their favor in the amount of $948,000 (ECF No. 24 at 29). Additionally, they seek summary judgment on Articmaster's counterclaim for breach of contract, based on their refusal to honor the noted agreements as is, among other things. (*Id.* at 27; ECF No. 9-1 at 7–8.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is

1 | "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///
///
///
///
///

## IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 24)

The Court examines each of Plaintiffs' requests for summary judgment in the light most favorable to Articmaster as the nonmoving party. In doing so, the Court finds the following principles to be of paramount importance to the instant MSJ:

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.[4] In such a case, the nonmoving party may defeat the [motion] without having produced anything.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (citations omitted).

### D. Breach of Contract Claims and Counterclaim

There are genuine disputes of material fact going to Plaintiffs' breach of contract claims that merits a denial of summary judgment.

To prevail on a claim for breach of contract under Nevada Law, a party must prove *four* elements: "(1) formation of a valid contract; (2) performance or excuse of performance by plaintiff; (3) material breach by the defendant; and (4) damages."[5] *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev. 2017) (quoting *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011)) (citation omitted).

As a preliminary matter, the Court notes that the parties appear to disagree on what agreements or contracts govern their relationship. The Court is inclined to conclude that the December 4 or 5, 2015 DA2s, IAs, and supplemental agreements are the operative agreements governing the parties' relationship and supersedes the prior

///

---

[4]To be clear, Plaintiffs have both the burden of production and ultimate burden of persuasion on their claims.

[5] Articmaster points out that in Plaintiffs' MSJ they cite to case law from this district, which excludes the second element for prevailing on their breach of contract claim, and thereby fails to argue the element. (*See* ECF No. 24 at 20 (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006), which relies on *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865).). To the extent the older *Richardson* case does not materially mirror Nevada's updated legal requirements for prevailing on a breach of contract claim, it has been superseded. To avail on this claim Plaintiffs therefore must also prove the second element of the four element requirements to establish breach of contract under Nevada law.

agreements between them. However, for the below stated reasons, the Court finds it most proper to decline the request for summary judgment and have a jury resolve the issue.

Plaintiffs' first claim for relief is partly premised on the breach of the MAAs. However, given the subsequent agreements and Plaintiffs having agreed to be distributors, a jury could find that the MAAs were supplanted and no longer govern the parties' relationship.

Further, under the first claim, Plaintiffs additionally allege breach of the DA2s based on: their claimed omissions of territories therefrom; an assertion of Articmaster violating Union Power's exclusivity to sell in Indonesia, even though Indonesia is not listed as a Union Power territory in the Exhibit C noting its territory in the DA2; and averring a failure to ship product to them "in consideration of the product advance funds, among other things." (ECF No. 1 at 10–11.) For their second claim for relief, they argue that Articmaster breached the IA due to the omissions, and by failing to issue share certificates corresponding to their investment. (*Id.* at 11–12.)

These claims for breach of the DA2 and IA, which implicitly requires that these agreements be deemed valid, are incongruous with Plaintiffs' declarations that they were essentially forced to sign the agreements without adequate opportunity to review them. The latter is clearly a challenge to the agreements' validity and enforceability. However, as indicated a reasonable jury could find the agreements binding and enforceable, and further find Plaintiffs are in fact the party in breach given their refusal to honor the agreements as the parties' agreed to in December 2015. For this latter reason, the Court also declines to grant summary judgment in Plaintiffs' favor on Articmaster's breach of contract claim.

For all these reasons, the Court denies summary judgment on Plaintiffs' breach of contract claims or Articmaster's counterclaim asserting the same.

///

///

///

### E.     Breach of Covenant of Good Faith and Fair Dealing

To succeed on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following: "(1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied." *Walker*, 259 F. Supp. 3d at 1149–50 (citing *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995)). A breach of the covenant can occur "[w]here the terms of a contract are literally complied with but one party deliberately disregards the intention and spirit of the contract." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

Plaintiffs argue two points supporting a contention that Articmaster has performed in a manner unfaithful to the contracts: first, Articmasters has repeatedly "accept[ed] payments from [them], now totaling $948,000, without providing value in return (whether in the form of products or share certificates)"; and second. Articmaster has ["repeatedly entered into new-agreements with [them]" to remove unfavorable terms for it. (ECF No. 24 at 23.) Plaintiffs argue that the latter has been a detriment to their ability to "capitalize" on their work to establish a market. (*Id.*)

Plaintiffs' arguments focusing on the third prong beget the question of what contract(s) governs the parties' relationship. Again, if the jury concludes that the December 2015 DA2s, IA, and supplemental agreements currently govern the parties' relationship, then the jury may reasonably conclude that Plaintiffs—not Articmaster—has operated in a manner unfaithful to these agreements (either by refusal to honor the agreements or premature claims of breach). Notably, Articmaster has in kind asserted a counterclaim for breach of the covenant, partly based on these agreements. (ECF No. 9-1 at 8–9.) Moreover, a jury could reasonably conclude that Plaintiffs entered into and sign the agreements willfully, knowingly, and without excuse so as to render irrelevant whether they subsequently found the agreements unfavorable. Accordingly, given the existence of a genuine dispute on the third material element, the Court need not consider Articmaster's

sole direct challenge to this claim which is based on the fourth prong. (*See* ECF No. 29 at 13.)

### F. Conversion

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (quoting *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)).

Again, the Court is not convinced that Plaintiffs have adequately met their burden on this claim as the moving party. In a single two-paragraph section addressing both their conversion and unjust enrichment claims, Plaintiffs posit that Articmaster is "exerting dominion wrongfully over the $948,000.00." (ECF No. 24 at 26.) However, they arrive at this position after only making arguments that appear to go solely to their unjust enrichment claims. (*See id.*) Plaintiffs do not otherwise directly address the other components of conversion. The Court therefore deems Plaintiffs argument to be that a claim for conversion is in effect legally tantamount to a claim for unjust enrichment. It is not.

Accordingly, the Court declines to entertain Plaintiffs' position that they are entitled to relief on this claim because Articmaster provides no argument addressing the claim in its response. As indicated, a contrary showing by a non-moving party, like Articmaster, is not warranted where the moving party, as Plaintiffs here, fail to carry their initial burden. *See, e.g.*, *Nissan Fire*, 210 F.3d at 1102–03 (as cited above). Articmaster, more than once, highlighted this principle in its response. (ECF No. 29 at 9, 14.) Moreover, "[w]heter a conversion has occurred is generally a question of fact for the jury." *Evans*, 5 P.3d at 1048 (citing *Bader v. Cerri*, 609 P.2d 314, 317 (Nev. 1980)). The Court thus declines to grant summary judgment on this claim.

### G. Unjust Enrichment

The essential elements of Plaintiffs' quasi contract unjust enrichment claim are:

> benefit conferred in the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Leasepartners Corps. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (citations omitted). "Additionally, unjust enrichment occurs when ever [sic] a person has and retains a benefit which in equity and good conscience belongs to another." *Id.* (internal quotation and citation omitted).

However, "[a]n action based on a theory of unjust enrichment is not available when there is an express written contract, because no agreement can be implied when there is an express agreement." *Id.* (citing 66 Am. Jur. 2d Restitution § 6 (1973)); *see also McKesson HBOC, Inc. v. New York St. Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) (citation omitted) ("Unjust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship to each other."). Articmaster argues that Plaintiffs' unjust enrichment claim[6] concerning the total $948,000 fails for this reason (ECF No. 29 at 13–14).

The Court declines to grant summary judgment on the claim. The Court agrees that the unjust enrichment claim is not a legal possibility where it remains uncontested that the parties' entire relationship is directed and motivated by the various agreements made between them. On the other hand, if a jury concludes the IA and the supplemental agreements embody the last and operative agreements between the parties and supersede all prior agreements, but are now "null and void", then conceivably Plaintiffs *may* have a valid unjust enrichment claim.

///

///

///

---

[6]Although Articmaster refers to the Plaintiffs' unjust enrichment as both an unjust enrichment claim and a claim for quantum meruit, the Court recognizes that these claims are treated similarly under Nevada law. *See Mobius Connections Grp., Inc. v. TechSkills, LLC*, No. 2:10-cv-01678-GMN-RJJ, 2012 WL 194434, *8 (D. Nev. 2012) (citing *Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995)).

### H. Declaratory Relief

Plaintiffs seek declaratory relief under NRS §30.010 *et seq.* (ECF No. 24 at 26–27; ECF No. 1 at 13 (vaguely referencing Plaintiffs potential claims).) Plaintiffs particularly seek a declaration that Union Power's territories under the DA2 are as follows: Algeria, Bahrain, Egypt, Iraq, Israel, Jordan, Kuwait, Lebanon, Libya, Morocco, Oman, Palestine, Qatar, South Africa, Sudan, Tunisia, UAE, Yemen, Saudi Arabia, Zimbabwe, Nigeria, Singapore, Malaysia, Indonesia, Kong Kong, Japan, Philippines, Australia, Thailand, ad Syria. (ECF No. 24 at 27.) This list is inclusive of territories Plaintiffs contend were improperly excluded from the DA2s they signed. (*Compare id.* at 15 *with* at ECF No. 28-2 at 31, 49.) Plaintiffs otherwise desire declarations relating to the $948,000 in various forms. (*Id.*) They request the Court declare they are entitled to shares of stock, product, or return of funds against the $648,000 and in proportion to the initial $300,000 investment. (*Id.*) They additionally request that the Court declare that they have not been provided with product or shares of stock, and that Articmaster is not entitled to retain the $948,000.[7] (*Id.*)

Under Nevada law, "[d]eclaratory relief is available only if: (1) a justiciable controversy exists between persons with adverse interests[;] (2) the party seeking declaratory relief has a legally protectable interest in the controversy[;] and (3) the issue is ripe for judicial determination." *Cty. of Clark, ex rel. Univ. Med. Ctr. v. Upchurch*, 961 P.2d 754, 756 (Nev. 1998). This Court has discretion to grant or deny a request for declaratory relief, even when it is presented with a justiciable controversy. *U.S. v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985). After a full consideration of the merits, the

///
///
///
///
///

---

[7] There is also no need for the Court to declare what no party contests—that Plaintiffs have not been provided shares of stock or product advance that they claim would account for the $948,000.

13

Court may "exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought." *Id.*

Plaintiffs' various declaration requests are grounded on matters for which genuine issues of material fact exist, as discussed *supra*. Accordingly, the Court denies summary judgment on the declaratory relief claim as well.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the motion to seal (ECF No. 27) is granted.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 24) is denied.

DATED THIS 4th day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE